COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Bumgardner and Frank
Argued at Chesapeake, Virginia


VIRGINIA EQUIPMENT DEVELOPMENT AND
 WCAMC CONTRACTOR'S GROUP
 SELF-INSURANCE ASSOCIATION
                                    MEMORANDUM OPINION* BY
v.   Record No. 0928-01-1          JUDGE ROBERT P. FRANK
                                       FEBRUARY 12, 2002
GLENN ANTHONY HINEBAUGH


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Iris W. Redmond (Midkiff, Muncie & Ross, on
          briefs), for appellants.

          John H. Klein (Montagna, Breit, Klein &
          Camden, on brief), for appellee.


     Virginia Equipment Development and WCAMC Contractors Group

Self-Insurance Association (employer) contend that the Workers'

Compensation Commission (commission) erred in awarding benefits

to Glenn A. Hinebaugh (claimant) by finding (1) claimant

suffered an injury by accident arising out of and in the course

of his employment; (2) claimant's current disability and medical

condition was caused by the injury of March 31, 2000; (3)

claimant's period of disability was supported by the evidence.

For the reasons that follow, we affirm the commission's award.

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

On or about March 31, 2000, claimant was working for employer as a pipe layer on a job in the Pembroke area of Virginia Beach. Claimant, in a bent position, had been breaking into a catch basin with a two-pound maul (sledgehammer) for two to three hours. Claimant testified that after he had hammered a hole big enough to insert a pipe, "I got up from beating it and went over to grab a pipe and as I started to walk towards the ditch to get the pipe, I got a real tingling and a numbness in my back." He also testified, "[B]efore I could get to the pipe, my back went out." On further questioning by the deputy commissioner, claimant explained he was walking down the ditch to grab the pipe and, "[a]s soon as I started to head for the pipe, that's when my back went out," adding, "[i]t felt like a little jolt in my back and then just numbness."

As a result of this back pain, claimant testified he fell to the ground and his co-worker, Roy Dixon, had to assist him out of the ditch and lay him down on the bank.

Claimant's medical history prior to March 31, 2000, indicated claimant went to Patient First on May 17, 1995, complaining of an "acute injury to his lower back [that occurred] while working construction on a jack hammer that got stuck." At that time, he complained of pain radiating into his right thigh. He was diagnosed as having "lumbar strain." No neurological dysfunction was noted. Patient First records

-

indicated claimant was "symptomatically pain-free [and] ha[d] already gone back to work" on May 31, 1995. On August 9, 1996, claimant presented to Patient First again, complaining of back pain caused by "lifting [a lot] of concrete and doing some shoveling." Again, "lumbar strain" was the diagnosis. On August 23, 1996, his symptoms improved, and he was released to regular duty.

On February 25, 1999, claimant presented to Patient First with complaints of "several years of lower back pain but over the past six months the pain has been getting worse with radiation of pain and paresthesia, numbness to his lateral and posterior thighs down to his knee." At that time, the diagnosis was "low back pain." On March 4, 1999, claimant's symptoms continued, and it was noted that the paresthesia was "especially [on] his right."

Claimant was examined for the current injury on April 14, 2000. Dr. Colin Hamilton, an orthopaedist, noted that claimant presented with a "5+ year history of recurrent low back pain with occasional radicular symptoms down both the right and left lower extremities, in the past, more frequently in the right lower extremity." Dr. Hamilton then noted that "his current episodes occurred about two weeks ago. He recalls using a brick hammer while at work and having recurrent low back pain." He noted radiating pain bilaterally into claimant's buttocks and down his left leg. Dr. Hamilton diagnosed a left-sided

-

herniated disc.  Claimant testified he had indicated to
Dr. Hamilton that his back hurt almost constantly since his 1995
injury.  However, Dr. Hamilton's office notes indicate claimant
referred to "intermittent" symptoms.

On April 26, 2000, Dr. Hamilton noted the following:
"Considering that he sustained a work injury in 1995 and has
never had more than a couple of months elapse without
significant low back pain since then, it seems reasonable to
relate his present pain syndrome, which includes sciatica, to
that injury."

Dr. Hamilton indicated on the same date: "Has a herniated
lumbar disc on left.  Has had persistent LBP since injury at
work 1995."  Claimant was scheduled for surgery.  His "History
and Physical Examination Report" for that surgery states a
"History of Present Illness" as:  "5 yo [(year old)] hx
[(history)] of back pain [with] radiculopathy.  Inj. using a
jackhammer in 1995."

The MRI, performed on May 15, 2000, indicated "an
extra-forarninal herniated nucleus pulposus at L5-S1 on the left
side."  On May 17, 2000, Dr. Hamilton learned that coverage for
the surgery was denied by the carrier.  On June 7, 2000,
Dr. Hamilton indicated claimant had "a herniated L-5 disc[,]
related to his work injury 3/31/00."

When claimant initially saw Dr. Hamilton on April 14, 2000,
claimant indicated he had been unable to work for the two weeks

-

since the injury.  Dr. Hamilton, on April 26 and May 17, 2000, indicated claimant was unable to work.  The doctor's next notation concerning claimant's ability to work was his report of September 1, 2000, in which he released claimant to light duty.

The deputy commissioner found claimant had established an injury by accident on March 31, 2000.  The deputy further found claimant's disability was causally related to the March 31, 2000 accident and awarded claimant temporary total disability through September 5, 2000.  From this opinion, employer requested review before the full commission.

By opinion dated March 9, 2001, the full commission affirmed the deputy's opinion, awarding temporary total benefits from April 14, 2000, through September 5, 2000.  The commission described claimant's work as bending over and "breaking into a 'catch basin' with a two-pound hammer."  The commission recited claimant's testimony that "once the hole was 'big enough to where we could put the pipe in,' he went to pick up a piece of pipe and 'felt like a little jolt in my back and then just numbness and my legs went out.'"[1]

---

[1] This description of events that led to the injury is somewhat abbreviated and may lead to a misunderstanding of the commission's ruling.  The facts are that claimant had been breaking into a catch basin with a two-pound sledgehammer. After he hammered a hole large enough to insert a pipe, he got up to walk over and grab a pipe.  As he started to walk to the ditch, his back "went out," and he felt a "jolt" in his back, followed by numbness.

Analysis

I. Injury by Accident

Employer argues the evidence did not establish an injury by accident. Employer contends claimant failed to identify any particularity in time or place, a sudden precipitating event, or mechanical change to his body. Claimant's injury, employer maintains, was the result of cumulative trauma or simply an ongoing condition caused by his prior injury.[2]

We review the evidence in the light most favorable to claimant, the party prevailing below. Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 165, 543 S.E.2d 619, 620 (2001).

To support an award under the Workers' Compensation Act, the commission must find "(1) an 'injury by accident' or occupational disease, (2) arising out of, and (3) in the course of, the employment" of a claimant. Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989).

To establish injury by accident, "a claimant must prove that the cause of his injury was an identifiable incident or sudden precipitating event and that it resulted in an obvious sudden mechanical or structural change in the body." Id. at

---

[2] In employer's brief, he restricted his argument to "injury by accident." However, at oral argument, employer expanded this argument to include whether the injury arose out of claimant's employment. We will not consider this argument as it was not presented in employer's brief. See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

-

589, 385 S.E.2d at 865 (emphasis in original).  The sudden

precipitating event:

> is one that "immediately" causes an injury,
> as distinguished from an injury that appears
> or occurs gradually.  See Stenrich Group v.
> Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996).
> However, an injury or injuries may be caused
> by one or several "sudden (or immediate)
> events" that cause the mechanical changes to
> occur in the body.

R & R Constr. Corp. v. Hill, 25 Va. App. 376, 379, 488 S.E.2d

663, 664 (1997).  See also Southern Express v. Green, 257 Va.

181, 189, 509 S.E.2d 836, 841 (1999).

"[The] pain does not have to be contemporaneous with the

accident."  Ratliff v. Rocco Farm Foods, 16 Va. App. 234, 239,

429 S.E.2d 39, 42 (1993).  However, "injury by accident" does

not include "cases in which the injury is gradually incurred or

incurred at an unknown time."  Manassas Ice & Fuel Co. v.

Farrar, 13 Va. App. 227, 232, 409 S.E.2d 824, 828 (1991).

This issue is a mixed question of fact and law; therefore,

this Court defers to the commission's factual findings on injury

by accident but reviews the final determination de novo.

Goodyear Tire & Rubber Co., 35 Va. App. at 167-68, 543 S.E.2d at

621.

Although employer argues the evidence did not support a

finding of a particular incident causing the injury, we find the

evidence sufficient to prove the injury to claimant's back

-

occurred at a particular time and place as a result of a specific incident.

Claimant was bending over and swinging a two-pound hammer for approximately two to three hours. When he concluded the task, he stood up and began to walk toward a piece of pipe. However, as he started to walk, he felt a sudden "jolt" accompanied by numbness.

Claimant did not gradually develop this back pain. He suddenly felt the "jolt" after standing up and beginning to walk, after swinging a two-pound hammer in a bent-over position for several hours on March 31, 2000. The injury resulted from this single identifiable incident "on a definite occasion during the performance of a specific piece of work." Southern Express, 257 Va. at 189, 509 S.E.2d at 841.

Despite the commission's abbreviated factual findings, the facts in the record show an identifiable, precipitating event for proving injury by accident. We find the evidence supports the commission's determination.[3]

---

[3] Even if the commission made an incorrect finding of fact, we still may affirm their conclusion. See Mercy Tidewater Ambulance Serv. v. Carpenter, 29 Va. App. 218, 226, 511 S.E.2d 418, 422 (1999) (an appellate court can affirm a correct conclusion of a lower court even though that decision was made for the wrong reasons).

-

## II. Causation

Employer next contends claimant failed to prove his injury was caused by the accident of March 31, 2000, rather than the result of his pre-existing injury or of cumulative trauma.

"Causation is a factual determination to be made by the commission, but the standards required to prove causation and whether the evidence is sufficient to meet those standards are legal issues" which this Court reviews de novo. Hercules, Inc. v. Gunther, 13 Va. App. 357, 361, 412 S.E.2d 185, 188 (1991).

The evidence here is sufficient to support the commission's finding of causation. Claimant testified he was able to perform his job, clearly uninjured, prior to his attempt to stand up and walk over to the pipe. In addition, the medical evidence, although inconsistent, concluded after reviewing all of claimant's tests, including his MRI, that the herniated disc was caused by the accident at work on March 31, 2000. As the commission's finding is supported by credible evidence, we will not disturb it on appeal. Id.

Employer's contentions address the weight that should have been afforded claimant's evidence. Employer suggests Dr. Hamilton did not make his causation determination based on the medical evidence, but instead to insure claimant's operation was covered by employer. The commission determined the credibility of the witnesses and evidence and found the doctor's final conclusion of causation credible. We will not disturb

-

this finding on appeal.  Marriott Int'l, Inc. v. Carter, 34 Va. App. 209, 215-16, 539 S.E.2d 738, 741 (2001).

Employer also argues Hinebaugh simply aggravated an old injury on March 31, 2000 and, therefore, the injury actually was created by an earlier event.  The law and the evidence do not support employer's interpretation of events.

Workers need not be "injury free" to receive compensation. If a pre-existing condition is exacerbated or aggravated by an industrial accident, the resulting disability is compensable. Corning, Inc. v. Testerman, 25 Va. App. 332, 339, 488 S.E.2d 642, 645 (1997).  For example, in Goodyear Tire & Rubber Co., this Court affirmed the award of compensation to a claimant who had arthritis and a degenerative knee condition prior to sustaining an aggravating inner knee injury while disengaging fabric from a machine.  35 Va. App. at 171, 543 S.E.2d at 623.

Here, the evidence indicated Hinebaugh had a pre-existing problem with his back.  However, he did not have a left-side herniated disc at L5-S1 until after the accident on March 31, 2000.  Although employer contends the medical evidence proved this injury already existed, the commission found the previous injury was to the right side.  Given the May 1995 medical record clearly rules out a left back injury and the 1999 medical record finds the L5-S1 disc space "WNL" (within normal limits), we find that the evidence supports the commission's finding.

-

III. Period of Disability

Finally, employer contends the medical evidence did not support the commission's determination that claimant was totally disabled between April 26, 2000 and September 5, 2000.

On April 26, 2000, and May 17, 2000, Dr. Hamilton noted Hinebaugh "obviously cannot work," and he recommended surgery. He also noted the need for surgery in May 2000. In September, the doctor, for the first time since March, released his patient for light-duty.

The commission was entitled to infer from this evidence that Hinebaugh was unable to work from the point he began receiving medical care until the doctor released him to light duty work. We cannot, as a matter of law, reverse this factual finding. Webb v. Eastern Airlines, 1 Va. App. 421, 423, 339 S.E.2d 563, 564 (1986).

For the reasons stated, we affirm the award of the commission.

Affirmed.

-