COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Felton and Kelsey
Argued at Richmond, Virginia


DONNA MITCHELL
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1555-04-2                 JUDGE ROBERT J. HUMPHREYS
                                                        FEBRUARY 8, 2005
THE MILLER GROUP AND PENNSYLVANIA
  MANUFACTURING ASSOCIATION INSURANCE CO.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Jean M. McKeen (Fitzgerald, Tomlin & McKeen, PLLC, on briefs),
              for appellant.

              Iris W. Redmond (Midkiff, Muncie & Ross, P.C., on brief), for
              appellees.


        Appellant Donna Mitchell ("Mitchell") appeals a decision from the Workers'

Compensation Commission denying her request for temporary total disability benefits. Mitchell

contends that the commission erred in finding that she failed to carry her burden of proof to

establish an injury by accident arising out of the course of her employment with The Miller

Group ("employer"). For the reasons that follow, we hold that the commission did not err, and

we therefore affirm the denial of temporary total disability benefits.[1]

        On appeal from a decision of the Workers' Compensation Commission, the evidence and

all reasonable inferences that may be drawn from that evidence are viewed in the light most

--------

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication. Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

        [1] Mitchell also argues that the commission incorrectly determined that her request for
benefits was barred because she failed to give employer timely notice of her injury pursuant to
Code § 65.2-600. However, because we hold that the commission did not err in finding that
Mitchell failed to carry her burden of proof, we need not reach this second argument.

favorable to the party prevailing below.  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003); Tomes v. James City (County of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002).  Here, then, we must view the facts in the light most favorable to employer, the party prevailing before the commission.

In March and April of 2003, Mitchell worked for employer's shipping and receiving department.  Mitchell's job required her to lift and move a variety of products weighing between 15 and 110 pounds and ranging in size from 96 inches to 12 feet in length.  As part of her regular duties, Mitchell would lift as many as 50 boxes a day.

On April 21, 2003, Mitchell was laid off from her position with employer.  On April 30, 2003, Dr. Squires, Mitchell's primary care physician, informed Mitchell that she might have a slipped disc in her spinal column.  Dr. Squires referred Mitchell to Dr. Gruner, a neurosurgeon, for an MRI.  Mitchell received the MRI on May 21, and the results of that MRI indicated that she had a herniated disc at the C6-7 level of her spine.  After her consultation with Dr. Gruner, Mitchell informed employer that she had a "possible slipped disc."

Mitchell filed a claim for temporary total disability benefits on September 26, 2003, alleging that her injury occurred "somewhere between April 1st and April 7th."  At a hearing conducted on December 1, 2003, Mitchell testified that, one day in early April, she was stacking boxes of shrink wrap in a closet when she felt a "burning pop" in her neck.  Mitchell said that she put the box down, walked around the loading dock for a few minutes, and then put the remaining boxes into the closet.  According to Mitchell, the boxes weighed 30 to 40 pounds a piece.

Mitchell testified that, after finishing her regular schedule on the day of the alleged accident, she continued to perform her regular work duties until she was laid off on April 21st.  She also testified that her symptoms became progressively worse over the two weeks following

the alleged accident, but she did not tell employer about her injury "[b]ecause [she] got bumped and bruised and cut all the [time]," and she "didn't think it was something that [she] had done that was going to require medical treatment," but was "just a pulled muscle." According to Mitchell, she believed that her symptoms – which consisted primarily of numbness in her left arm – were attributable to a heart problem. She also testified that, before the alleged incident at the beginning of April, she "never had any problem with [her] neck, period."

At Mitchell's appointment with Dr. Squires on April 30, Mitchell reported a two-week history of left arm pain and a stiff neck. Mitchell conceded on cross-examination that she did not tell Dr. Squires about the alleged accident, but she asserted that her failure to do so was because she "[d]idn't make the connection" between the incident and her symptoms.

According to Dr. Gruner's notes, Mitchell informed him that she had done "a fair amount of heavy work in the last few years." She also told Dr. Gruner that, a few weeks before the MRI, she began to experience pain in her left shoulder that worsened over the next few days. Mitchell admitted, however, that she did not tell Dr. Gruner anything about the alleged accident.

On June 4, 2003, Mitchell received an epidural injection from Dr. Long, a physician who treats chronic pain. Dr. Long's notes indicate that Mitchell told him that she "was injured on the job" while "she was stacking a supply closet with 30-pound boxes . . . and lifted one about shoulder height and felt a pop and snap in her neck, going down to the left neck and arm. Since that time she has had numbness, burning, and weakness in the left arm." According to Dr. Long's notes, Mitchell also told Dr. Long that she believed the injury was not covered by workers' compensation because she was fired the day after the accident.

By opinion dated December 22, 2003, the deputy commissioner denied Mitchell's claim, holding that she failed to meet her burden of proving an injury by accident. The deputy commissioner reasoned that:

The claimant testified at hearing that she lifted a box at work and felt a burning sensation in her neck and eventually symptoms of pain and numbness in the arm. The claimant went to the doctor approximately two weeks later but apparently did not report any lifting episode. The claimant subsequently saw Dr. Gruner whose notes reflect on the development of pain in the course of the claimant's employment. It is not until the claimant saw Dr. Long on June 4, 2003 that there is any report of an onset of pain with lifting and even this report is somewhat at odds with the claimant's testimony. Based on the evidence as a whole, we are not persuaded that the claimant sustained an injury by accident as alleged.

On appeal, the full commission, with one commissioner dissenting, affirmed the denial of Mitchell's claim. The commission noted that, although Mitchell "described a reasonably specific incident," she was unable to identify the date that the alleged accident took place. The commission observed that Mitchell did not seek medical attention until two weeks after the alleged injury, also noting that she neglected to inform either Dr. Squires or Dr. Gruner about the "work-related lifting incident." The commission concluded that, although "[i]nability to identify a specific accident date, a failure to immediately report the accident to her employer, a delay in seeking treatment, and a delay in informing physicians about the alleged accident are not individually fatal to a claim," those factors, considered collectively, supported the deputy commissioner's decision "that the claimant failed to satisfy her burden of proving a compensable injury by accident resulting from an identifiable accident."

On appeal, Mitchell contends that the commission erred in holding that she failed to sustain her burden of proving an injury by accident, reasoning that her "uncontradicted testimony" was sufficient to prove, by a preponderance of the evidence, that she "suffered a compensable work related injury . . . when she felt the pop and burning sensation while lifting the seventh box of shrink wrap at work." We disagree.

On appeal, "decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Federated

Mutual Ins. Co., 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991); see also Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). However, "this Court is not bound by the legal determinations made by the commission." Robinson v. Salvation Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995). Whether an employee has suffered an "injury by accident" is a mixed question of law and fact. See Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167-68, 543 S.E.2d 619, 621 (2001). Accordingly, we will defer to the commission's factual findings, but we review *de novo* the final determination of whether Mitchell failed to carry her burden of proof.

To establish an "injury by accident," a claimant must prove: (1) that the injury appeared suddenly, at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event; and (3) that it resulted in an obvious mechanical or structural change in the human body. See Southern Express v. Green, 257 Va. 181, 187, 509 S.E.2d 836, 838 (1999); Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989); Pro-Football, Inc. v. Uhlenhake, 37 Va. App. 407, 413, 558 S.E.2d 571, 574 (2002). Also, although the claimant's recognition of the injury "does not have to be contemporaneous with the accident," Ratliff v. Rocco Farm Foods, 16 Va. App. 234, 239, 429 S.E.2d 39, 42 (1993), an "injury by accident" does not include "cases in which the injury is gradually incurred or incurred at an unknown time," Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 232, 409 S.E.2d 824, 828 (1991); see also Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996). Thus, unless a claimant can identify her injury with a "specific movement made or action taken at a particular time at work . . . [s]he cannot recover compensation." Badische Corp. v. Starks, 221 Va. 910, 913, 275 S.E.2d 605, 607 (1981).

Here, there is no question that Mitchell's herniated disc constitutes a "mechanical or structural change in the human body." See, e.g., R&R Constr. Corp. v. Hill, 25 Va. App. 376,

379, 488 S.E.2d 663, 664 (1997) ("A disk herniation is a mechanical or structural change in the body.") Also, as noted by the commission, Mitchell "described a reasonably specific event," and she testified that her injury was caused by that event.

However, the deputy commissioner made no factual finding that the event Mitchell described did, in fact, occur. Nor did the deputy commissioner find that Mitchell's injury resulted from the event she described. Rather, the deputy commissioner's report makes plain that, in the absence of sufficient corroborating evidence, he was unpersuaded that Mitchell's injury was actually caused by a lifting accident at work.

Specifically, the deputy commissioner noted that Mitchell did not describe the alleged accident to either Dr. Squires or Dr. Gruner, the two physicians providing her primary treatment for the injury. Dr. Gruner's report indicates instead that Mitchell had told him "she was in the normal performance of her job when she began to notice some pain by the left shoulder," which differs from her later description of the incident. The first documentation of the alleged accident appears in the notes from Mitchell's appointment with Dr. Long on June 4, 2003 – a full two months after the alleged incident. Moreover, as noted by the deputy commissioner, Dr. Long's report "is somewhat at odds with the claimant's testimony." Dr. Long's report indicates that Mitchell told him that the lifting accident occurred the day before she was fired – which would have been April 20, 2003. However, Mitchell has maintained in this proceeding that the incident occurred during the first week of April.

The commission's report expresses similar doubts about whether the alleged event actually caused Mitchell's injury. Specifically, the commission points to Mitchell's "[i]nability to identify a specific accident date," her "failure to immediately report the accident to her employer," the "delay in seeking treatment," and her "delay in informing treating physicians about the alleged accident."

- 6 -

In a proceeding before the Workers' Compensation Commission, as in any other legal proceeding, the deputy commissioner, as the trier of fact, "is free to believe or disbelieve, in whole or in part, the testimony of any witness." English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004) (citing Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991)).  Here, then, the deputy commissioner was entitled to disbelieve Mitchell's self-serving testimony and resolve any evidentiary conflict in favor of employer.  See id.  Thus, we cannot say as a matter of law that the commission erred when if found that Mitchell failed to meet her burden of proof.  Accordingly, we affirm the commission's denial of temporary total disability benefits.

Affirmed.